[No. 6040. Decided March 8, 1906.]

ALBERT LILIENTHAL *et al., Appellants,* v. HUGH HERREN, *Respondent.*[1]

FRAUD—CONTRACTS—PLEADINGS—SPECIFIC STATEMENT OF FACTS. In an action upon a written contract for the sale of hops, an answer alleging that the plaintiffs, by mistake or with intent to deceive defendant, inserted an erroneous description in the contract and induced the defendants to sign the same, representing that it contained the agreement of the parties, is a sufficiently specific allegation of the facts constituting fraud, and is a valid defense to the action.

CONTRACTS—PAROL EVIDENCE TO VARY WRITING—FRAUD. Evidence of conversations prior to the making of a written contract is admissible to vary or change the terms of the writing where it was received for the purpose of showing fraud in drawing up the contract and stating the terms agreed upon.

CONTRACTS—SALE OF HOPS—MISTAKE OR FRAUD—EVIDENCE—SUFFICIENCY. In an action on a contract for the sale of hops to be grown by the defendant on two certain tracts of land containing ten and twenty acres respectively, the evidence sufficiently shows that the defendant signed the contract through the mistake or fraud of the plaintiffs in drawing up the contract, and that he was not liable thereunder, where it appears that the defendant, to the knowledge of the plaintiffs, had already sold the hops on the twenty-acre tract at the same price and to another firm of buyers, that the contract was an involved one, and that the defendant had confidence in the agent of the plaintiffs, and asked if the contract contained the terms of the agreement, which in fact was confined to the ten-acre tract, and that he was informed by the agent that it did, and that he signed the contract without reading it, relying upon such representations.

1Reported in 84 Pac. 829.

14—42 WASH.

Appeal from a judgment of the superior court for Pierce county, Linn, J., entered July 25, 1905, upon the special verdict of a jury rendered in favor of the defendant, and in favor of the plaintiffs for a sum admitted to be due by direction of the court, in an action on a contract. Affirmed.

*H. G. & Dix H. Rowland,* for appellants.

*George W. Fogg* and *Ellis & Fletcher,* for respondent.

MOUNT, C. J.—This action was brought by the appellants, plaintiffs below, to recover damages against respondent for an alleged breach of a written contract. The complaint sets out the contract, by the terms of which respondent agreed to sell and deliver to the appellants twenty thousand pounds of hops, for an agreed price of fifteen cents per pound, to be grown in the year 1904 on a certain farm containing three hundred and twenty acres of land, and agreed to advance to respondent $600 at the date of the contract, and $1,000 more at picking season. The complaint then alleged, that appellants advanced the said sums as agreed; that respondent raised more hops than necessary to comply with the contract, but that he delivered only nine thousand eight hundred and sixty-eight pounds, and refused to deliver the balance; that the advances made exceeded the price of the hops delivered by the sum of $119.80; that appellants were damaged in the sum of $1,519.80 for hops which respondent agreed but failed to deliver, and $119.80 which was overpaid for those delivered, and prayed for judgment for $1,639.60.

The answer of respondent admitted the signing and delivery of the writing sued upon, but denied that said writing was the contract of the parties, and admitted that respondent raised more than twenty thousand pounds of hops on the said three hundred and twenty acres of land during the year 1904, and that he delivered only nine thousand eight hundred and sixty-eight pounds of hops to the appellants; that appellants made the advancement as alleged, which amounted

to $119.80 more than the purchase price of the hops delivered. As an affirmative defense, the answer alleged, in substance, that respondent was occupying under lease the "Carson farm," consisting of three hundred and twenty acres of land, thirty acres of which were planted to hops, twenty acres of the thirty being in one yard and ten acres in the other; that the hops to be grown on the twenty-acre yard for the year 1904, to the extent of forty thousand pounds, had been previously sold to Peer Brothers, at fifteen cents per pound; that the appellants had full knowledge of said sale; that appellants' agents solicited the purchase of the hops to be grown on the ten-acre yard for the year 1904, and whatever surplus there might be on the twenty-acre yard over the forty thousand pounds, which had been sold to the said Peer Brothers, at fifteen cents per pound; that respondent agreed to sell the same at that price to appellants upon the terms stated in the written contract; that appellants' agents undertook to reduce the agreement to writing, and by fraud or mistake the contract was drawn to include all hops grown on the whole three hundred and twenty acres; that respondent did not agree to sell the hops which had already been sold, and did not intend to sign a contract for the hops growing on the twenty-acre yard, and that the said written contract was signed by mistake on his part and without knowledge of the fact that it required him to sell to the appellants the hops which were grown on the twenty-acre yard, and that the contract was drawn so as to include the twenty-acre yard by mistake or fraud on appellants' part; that appellants represented that the contract as drawn was as agreed upon, and respondent, relying upon said representation, signed the same; that respondent had no copy of the contract, and did not know until this action was brought that appellants claimed to have purchased the hops grown on the twenty-acre yard; that all the hops grown on the twenty-acre yard were less than forty thousand pounds, and were all delivered to Peer Brothers, under their contract with respondent, and that all the hops

grown on the ten-acre yard were delivered to appellants under the contract sued upon.

It will not be necessary to notice other separate defenses. A reply denied all the allegations of the answer. Upon the trial, to the court and a jury, a verdict was returned in favor of the appellants, by direction of the court, for $119.80, admitted by the answer to be owing from respondent to the appellants. The jury also returned special findings as follows:

"Q. Did plaintiffs or their agents induce defendant to sign said contract by misrepresentation or fraud? Ans. Yes, by misrepresentation. Q. Did plaintiffs or their agents at the time of signing the contract sued upon mislead defendant as to the contents of the contract, and did defendant at the signing of the contract do so relying upon representations made by plaintiffs or their agents? Ans. Yes."

Appellants contend that the allegations of fraud contained in the answer are general and, therefore, raise no issue upon which evidence could be introduced. The rule is that general allegations of fraud are insufficient. The facts must be set out specifically, so that the person accused of fraud may know just what he is required to meet in order to refute the charges. 9 Ency. Plead. & Prac., p. 686; Bump, Fraudulent Conveyances (4th ed.), § 560. The facts constituting fraud are alleged in the answer, viz., that the appellants, by mistake or intending to deceive the respondent, inserted in the written contract a description of the whole three hundred and twenty acres of land, and induced respondent to sign the same, representing that it contained the agreement, when only ten acres was agreed upon; and thereby including in the contract, without notice to respondent, land not agreed or intended to be included. This was not a general allegation of fraud. It was a statement of the specific facts relied upon and, if true, invalidated the contract. The answer was therefore sufficient to constitute a defense upon the ground of fraud.

Appellants contend further that the court erred in receiv-

ing evidence of conversations prior to the making of the contract, which evidence had the effect to contradict or vary the terms of the contract.   This is the general rule, where the contract is in writing and where a party seeks to avoid or change the terms of it and no fraud is alleged.   But,

"The fact that a contract has been reduced to writing, or that there are written warranties, is no ground for excluding parol evidence that one of the parties was induced to enter into the same by false and fraudulent representations of the other, though the writing is silent on the subject to which the representations relate; for it is a well-settled exception to the general rule excluding parol evidence to vary or change a written contract, that such evidence may be received for the purpose of showing fraud."   14 Am. & Eng. Ency. Law (2d ed.), p. 199, and cases cited.

It was conclusively shown in this case that the respondent had previously sold the hops to be grown on twenty acres of the land, to the amount of forty thousand pounds, at fifteen cents per pound, to a firm by the name of Peer Brothers, and had entered into a written contract of sale therefor with said Peer Brothers, and that the appellants knew about this sale prior to the time they sought to make the contract sued upon.   There is no dispute of these facts. Nothing was to be gained by the respondent in agreeing to sell the same hops to the appellants at the same price they had already been sold for, and it is inconceivable that respondent would knowingly place himself in a position where he would be certain to respond in damages to one or the other of the two parties, and where he could reap no possible benefit from the second contract of sale of the twenty-acre yard. It is true that the respondent could read, and that the written contract was handed to him with the request that he read it, and he did glance over it hurriedly and without reading it carefully; but he testified that he was well acquainted with the agents of appellants, that he had worked for them, and he relied upon them, and that he asked them if the contract was in accordance with his memorandum agreement and

was assured that it was, and he thereupon signed it relying solely upon the statement of appellants' agents that the contract was all right. The contract is long and involved. It covers five pages of typewritten matter, and it is doubtful if any person not accustomed to legal documents would fully comprehend its meaning without very careful study.

Even if respondent had read the contract, we doubt if he could have discovered that it conveyed hops already sold, because it does not recite that he shall deliver all the hops to be grown on the thirty acres planted to hops, but recites "the seller does hereby bargain and sell unto the buyers, and does hereby agree to deliver . . . twenty thousand pounds net of that certain crop of hops to be cultivated and produced by the seller as aforesaid on said land during the year 1904." Another section of the contract provides: "If the seller be unable to perform this contract by reason of an unfavorable season or seasons, he shall not be liable in damages hereunder except to repay all advances made to him or them by the buyers with interest thereon as herein provided." And respondent testified that, when he signed the contract, he told the appellants' agents that the ten acres might not produce the amount of twenty housand pounds of hops, and that they then referred to this clause of the contract and read it to him, and stated that it absolved him from any liability except for the amount of money advanced or the hops grown on the ten acres of land. Under these circumstances, we think the respondent had a right to rely upon the representations of the appellants' agents as to what the contract contained. It was shown without contradiction, that the appellants received all the hops grown on the ten acres of land; that Peer Brothers received all that were grown on the twenty acres in the other yard, which they had purchased, and that there were not enough hops grown on either yard to fill the full amount required by either contract; that appellants' agents knew of the fact that respondent was delivering the hops from the twenty-acre yard to Peer Brothers as

they were being picked, and made no objection thereto. Under these circumstances the facts as found by the jury and approved by the court were correct.

The judgment was right. It is therefore affirmed.

ROOT, CROW, HADLEY, FULLERTON, and DUNBAR, JJ., concur.